IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MATTHEW R. LEIMBACH,<br><br>            Plaintiff,<br><br>    vs.<br><br>HAWAII PACIFIC HEALTH,<br>WILCOX MEMORIAL HOSPITAL,<br>KAUAI MEDICAL CLINIC,<br>and DOES 1-50,<br><br>            Defendants. | CIVIL NO. 14-00246 JMS-RLP<br>(EMTALA)<br><br>**MEMORANDUM IN<br>SUPPORT OF MOTION** |

928111v1 / 9297-27

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL ALLEGATIONS .......................................................................... 2

III.  PLAINTIFF'S FIRST AMENDED COMPLAINT MUST BE DISMISSED
BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED ............................................................................................... 6

    A.  Plaintiff Has Failed To State A Claim Under EMTALA ........................... 8

        1.   Appropriate Medical Screening .................................................... 9

        2.   Stabilization ............................................................................... 15

    B.  Plaintiff Cannot State A Claim Under 28 USC § 2201
Due To Lack Of Jurisdiction ........................................................... 17

IV.  Conclusion ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................7, 8, 11

*Baker v. Adventist Health, Inc.*,
260 F.3d 987 (9th Cir. 2001) ....................................................*passim*

*Bryant v. Adventist Health System West*,
289 F.3d 1162 (9th Cir. 2002) ....................................................15, 17

*Eberhardt v. City of Los Angeles*,
62 F.3d 1253 (9th Cir. 1995) .............................................................16

*Hicklin v. WBH Evansville, Inc.*,
2001 U.S. Dist. LEXIS 22649 (S.D. Ind. Dec. 14, 2001) ..................13

*Jackson v. East Bay Hospital*,
246 F.3d 1248 (9th Cir. 2001) ................................................9, 10, 15

*Jones v. Community Redevelopment Agency*,
733 F.2d 646 (9th Cir.1984) ..............................................................18

*Lewellen v. Schneck Med. Ctr.*,
2007 U.S. Dist. LEXIS 60358, 2007 WL 2363384 (S.D. Ind. Aug.
16, 2007) ..........................................................................................13

*Money v. Health*,
2012 U.S. Dist. LEXIS 49922 (D. Nev. Apr. 9, 2012)................10, 11

*Pascua v. Option One Mortg. Corp.*,
2014 U.S. Dist. LEXIS 178610 (D. Haw. Dec. 31, 2014) ...................6

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...............................................................8

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ...........................................................6, 7

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) .................................................................8

**Statutes**

28 U.S.C. § 1331 ...............................................................................2, 17

42 U.S.C. § 1395dd(a) ....................................................................*passim*

42 U.S.C. § 1395dd(e)(1)(A) ................................................................10

28 USC § 2201 ...........................................................................1, 5, 17

HRS § 671-1...............................................................................1, 5

HRS § 671-11................................................................................1

**Other Authorities**

Rule 12(b)(6) of the Federal Rules of Civil Procedure.........................................2, 7

Rule 12(b)(1) of the FRCP...................................................................17

FRCP 12(b)(1)...............................................................................2

FRCP 12(d) ................................................................................6

Rule 12(b)(6)........................................................................7, 8, 11

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiff MATTHEW R. LEIMBACH ("Plaintiff") filed this civil

action against Defendants HAWAI`I PACIFIC HEALTH; WILCOX MEMORIAL

HOSPITAL ("WMH"); and KAUAI MEDICAL CLINIC ("KMC") (collectively

referred to herein as ("HPH Defendants")), for alleged violations of the Emergency

Medical Treatment and Active Labor Act "EMTALA" (Claims For Relief I-III)

and he is also seeking a declaratory judgment under 28 USC § 2201 (Claim For

Relief IV) that EMTALA claims are cognizable medical torts for review by a

Medical Inquiry and Conciliation Panels ("MICP") under HRS § 671-1.[1]

Plaintiff's First Amended Complaint ("FAC") fails to state sufficient

facts to establish a claim under EMTALA).[2]  His threadbare claims against HPH

---

[1]  It is unclear what relief Plaintiff is seeking in his claim for a declaratory judgment under 28 USC § 2201, as MICP inquiries are required by the State of Hawai`i for the purpose of reviewing issues of liability and damages in medical tort claims against health care providers.  *See* HRS § 671-11.  Federal law, in general, and EMTALA claims like the ones made here have absolutely no bearing on a MICP inquiry.  In any event, Plaintiff asserted his EMTALA claims in the MICP Inquiry, so his request for a declaratory judgment thus makes little sense.

[2]  Plaintiff filed his original complaint on May 23, 2014 (Dkt. No. 1) and HPH Defendants served Plaintiff with a motion to dismiss that complaint and requesting that certain portions and exhibits concerning Plaintiff's medical condition be kept confidential.  The motion was returned by the Court for further clarification of HPH Defendants' request.  Since then, Plaintiff and HPH Defendants have executed and filed a stipulation permitting references to Plaintiff's medical records in open proceedings (Dkt. No. 30).  Plaintiff filed his FAC before HPH Defendants could refile their motion to dismiss in an attempt apparently to rectify various

*continued on next page*

928111v1 / 9297-27

Defendants are nothing more than conclusory statements that do not give rise to a viable claim for relief.  For these reasons, and as set forth in more detail below, HPH Defendants respectfully move this Court to dismiss all claims asserted against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on the grounds that Plaintiff has failed to state any claim upon which relief can be granted, and therefore, there is no basis for federal jurisdiction under 28 U.S.C. § 1331.  In the absence of subject matter jurisdiction, Plaintiff's FAC must be dismissed in its entirety pursuant to FRCP 12(b)(1).

## II.   FACTUAL ALLEGATIONS

According to the FAC (Dkt. No. 21), which is Exhibit A to the attached Declaration of William S. Hunt ("Hunt Dec"), Plaintiff arrived at HPH Defendants' outpatient clinic on May 24, 2012, but was sent to their annexed emergency room because his blood pressure was low.  Exh. A, ¶ 9.  Plaintiff alleges that he was experiencing pain in his left foot and that he was suffering from shortness of breath, a bitter taste in his mouth, and flu-like symptoms that included a fever, body-aches, headaches, nausea, dehydration, pain and vomiting.  *Id.*, ¶ 8. He admits that upon presentation to the emergency room, HPH Defendants provided him with a medical screening examination that included a physical

---

*continued*

deficiencies pointed out in Defendants' motion as to the allegations in the original complaint.  However, Plaintiff's efforts were futile, since the FAC still fails to state a claim upon which relief can be granted in spite of its 84 prolix paragraphs.

examination, blood tests, testing of sodium, creatinine and glucose levels, a

urinalysis, ankle x-ray, and administration`n of medications.  Exh. A, ¶ 13.  After

diagnosing Plaintiff with a viral infection and a sprain, Plaintiff was discharged

home.  *Id.*  He was instructed to follow up in the urgent care clinic in in 4 days to

check outstanding lab results.  *Id.*  Because he did not have health insurance,

Plaintiff met with a social worker to submit paperwork for enrollment in the

Hawai`i Medicaid ("Med-Quest") program.  *Id.,* ¶ 10.

Three days later, on May 27, 2012, Plaintiff returned to the ER with a

number of complaints.  Exh. A, ¶ 28.  HPH Defendants admitted him to the

hospital and treated him and entered a note in his chart the following day that

stated "Brought to OR . . . yesterday with findings of purulent drainage from leg,

fascia looked intact, small amounts of necrotic muscle.  Possible very early

necrotizing fasciitis.  Cultures growing Group A Strep."  *Id.,* ¶ 72.  On May 28,

2012, Plaintiff was treated by a general surgeon for "cellulitis of left leg, possible

abscess, possible fasciitis."  *Id.* ¶ 73.   On May 31, 2012, Plaintiff was taken by

Medivac to Queen's Hospital and treated for necrotizing fasciitis.  *Id.,* ¶¶ 76

and  77.

The FAC contains a number of confusing, vague and conclusory

statements, including that HPH Defendants were aware that Plaintiff "had marginal

assets and no health insurance."  Exh. A, ¶ 10.  He also states that he informed

HPH Defendants that he had no insurance and that his medical chart entries show

"Medicaid" or "no insurance." *Id.* Plaintiff also alleges that HPH Defendants "provided a screening examination that was not comparable to other patients with similar symptoms." *Id.* ¶ 14.[3] He contends that a nurse informed him that other patients with his symptoms were given MRI or CT scans, but that HPH Defendants could not use its scan equipment for him because "the machine was 'down.'" *Id.* ¶ 60. He further alleges that the screening examination he received on May 24 was "not in compliance with Defendant's procedures" *Id.* ¶ 40 and that it was "inappropriate, discriminatory, cost-saving, and/or cursory" in relation to his severe and acute symptoms. *Id.* ¶ 29.

With respect to the screening examination he received when he returned to the ER on May 27, 2012, Plaintiff alleges that the "disparate and/or cursory examination could not possibly identify just some of Matthew's cumulative, and by now, extremely obvious symptoms as acute and severe symptoms of necrotizing fasciitis," such as 8/10 pain in his left foot; local evidence of abrasion, cut or contusion at left foot; very high fever; flu-like symptoms; "lack

---

[3] In ¶¶ 15-18 of the FAC, Plaintiff improperly identifies by name four other patients whom he claims had previously been diagnosed and treated at WMH for necrotizing fasciitis and provides some details about their medical treatment. Although it is unknown at this time how Plaintiff obtained this confidential health information, the disclosure of this information is a clear breach of these patients' right to privacy, and one of these patients is allegedly a minor (*see* ¶¶ 15, 16 and 23 of Exh. A). Plaintiff did not provide any insurance information regarding any of these four patients or provide any indication as to the relevance of these allegations.

of respiratory symptoms;" high white blood cell count; failing platelets and bandemia; hypotension; volume depletion, and "early sepsis." Exh. A, ¶ 65. He also asserts that the emergency condition detected by HPH Defendants was never stabilized. *Id.* ¶ 63.

These allegations form the basis for Plaintiff's claims against the HPH Defendants under EMTALA.[4] Exh. A, ¶ 1. Plaintiff also appears to assert a claim for declaratory judgment under 28 USC § 2201 that EMTALA claims are cognizable medical torts for review by a MICP under HRS § 671-1. *See Id,.* Fourth Claim for Relief, ¶¶ 78-84. As federal EMTALA claims - like the ones made here by Plaintiff - are not relevant in a MICP inquiry that focuses on Hawai`i state law, it is unclear why Plaintiff has requested a declaratory judgment from this Court. Because the FAC fails to state any EMTALA claim against the HPH

---

[4] Plaintiff's First Claim for Relief under Section 1395dd(a) of EMTALA consists of the following three "counts:" I: disparate or inappropriate examination in relation to severe, acute symptoms presented; II: inappropriate or cursory emergency room examination in relation to severe, acute symptoms presented; III: disparate or inappropriate emergency room examination in relation to severe, acute symptoms presented in violation of Defendants' procedures"; (2) "disparate examination as judged by medical profession"; and (3) "cursory emergency room examination in relation to severe, acute symptoms presented". Exh. A, ¶¶ 3-57. Plaintiff's second and third claims are under Section 1395dd(b) of EMTALA. *Id.* ¶¶ 58-77.

Defendants on which relief can properly be granted, Plaintiff's claim for

declaratory judgment must also be dismissed for lack of jurisdiction.[5]

## III. PLAINTIFF'S FIRST AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As a preliminary matter, the HPH Defendants note that a description

from the medical records of Plaintiff's evaluation from the Wilcox emergency

department has been incorporated by reference into the FAC.  As a general rule,

courts considering evidence outside the pleadings must normally convert a

12(b)(6) motion into a Rule 56 motion for summary judgment and give the

nonmoving party an opportunity to respond.  *See* FRCP 12(d); *United States v.*

*Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  However, an important exception to

this rule is that a court may "consider certain materials--documents attached to the

complaint, **documents incorporated by reference in the complaint**, or matters of

judicial notice--without converting the motion to dismiss into a motion for

summary judgment."  *Pascua v. Option One Mortg. Corp.*, 2014 U.S. Dist. LEXIS

178610, at *5 (D. Haw. Dec. 31, 2014) (citing *Ritchie*, 342 F.3d at 908).  Even if a

document is not attached to a Complaint it may be incorporated by reference if the

plaintiff refers extensively to the document or the document forms the basis of the

---

[5]  It is unclear why Plaintiff named Hawaii Pacific Health and Kauai Medical Clinic as Defendants, since EMTALA is clear that only a hospital may be held liable for an EMTALA claim.  *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256 (9th Cir. 1995).  Thus, if for no other reason, Hawaii Pacific Health and Kauai Medical Clinic must be dismissed as Defendants.

plaintiff's claims. *Ritchie*, 342 F.3d 903, 908.  A defendant may offer such a document, and the court may treat such a document as part of the Complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6). *Id.*

Although Plaintiff's medical records regarding his evaluation in the HPH Defendants' ER are not attached to his FAC, the ER records have been incorporated by reference in it because Plaintiff refers to, or quotes extensively from, the information and statements allegedly made in these documents. Accordingly, HPH Defendants have attached a true and correct copy of the reacted records from Plaintiff's evaluation in the ER on May 24, 2012 as Exhibit B to the Declaration of Theresa Ramey, RN ("Ramey Dec") and a true and correct copy of the redacted records from Plaintiff's May 27, 2012 ER visit, attached as Exhibit C to the Ramey Dec, for the Court's consideration.

In considering the sufficiency of a complaint under FRCP Rule 12(b)(6), the Court assumes the truth of a plaintiff's allegations of fact, but probes whether those facts are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a

cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Neither should the court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Plaintiff's FAC is devoid of factual content that would permit a court to draw any inference that HPH Defendants are liable for violations of EMTALA. The allegations made by Plaintiff rest on "labels and conclusions" that amount to nothing more than "naked assertions." Such allegations, without more, fail to make Plaintiff's claim to relief "plausible on its face" and necessitate dismissal under Rule 12(b)(6).

### A.     Plaintiff Has Failed To State A Claim Under EMTALA

Dismissal of Plaintiff's FAC is warranted because Plaintiff has failed to state sufficient facts to establish a claim. Congress enacted EMTALA to respond to the specific problem of hospital emergency rooms refusing to treat patients who were uninsured or who could otherwise not pay for treatment. *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 993 (9th Cir. 2001). EMTALA imposes two duties on hospital emergency rooms. First, the hospital has a duty to provide "an appropriate medical screening examination within the capability of the

hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists."  42 U.S.C. § 1395dd(a).  Second, if "the hospital determines that the individual has an emergency medical condition, "the hospital has a duty to provide "either (A) within the staff and facilities available at the hospital, for such medical examination and such treatment as may be required to stabilize the medical condition, or (B) for the transfer of the individual to another medical facility …."  *Id.* § 1395dd(b)(1);  *Jackson v. East Bay Hospital*, 246 F.3d 1248, 1254-55 (9th Cir. 2001).  The statute is not intended to create a national standard of care for hospitals or to provide a federal cause of action akin to a state law claim for medical malpractice.  *Baker*, 260 F.3d at 993 (citing *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995)).  The Ninth Circuit has made it clear that the statute expressly contains a non-preemption provision for state tort remedies.  *Id.*  (citing 42 U.S.C. § 1395dd(f)).  As there are no substantive facts alleged in the FAC that establish that the HPH Defendants:  (1) failed to provide Plaintiff with an appropriate medical screening to determine whether an emergency medical condition existed or (2) failed to stabilize Plaintiff once an emergency medical condition was detected, the Court should dismiss all of the EMTALA and other claims asserted in the Complaint.

### 1.    Appropriate Medical Screening

EMTALA requires that hospitals provide an "appropriate medical screening" to all individuals who request care from the emergency department to

determine whether or not an emergency medical condition exists.  *See* 42 U.S.C.

§ 1395dd(a).  An "emergency medical condition" is one "manifesting itself by

acute symptoms of sufficient severity (including severe pain) such that the absence

of immediate medical attention could reasonably be expected to result in -- (i) the

placing of the health of the individual …in serious jeopardy, (ii) serious

impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or

part …."  42 U.S.C. § 1395dd(e)(1)(A).

A hospital satisfies EMTALA's appropriate medical screening

requirement if it provides a patient with "an examination comparable to the one

offered to other patients presenting similar symptoms, unless the examination is so

cursory that it is not designed to identify acute and severe symptoms that alert the

physician of the need for immediate medical attention to prevent serious bodily

injury."  *Jackson*, 246 F.3d at 1256.  In other words, what gives rise to a viable

EMTALA claim is when the patient is not screened, or if screened, that the

screening differed markedly from that provided to other patients.  *Money v. Health*,

2012 U.S. Dist. LEXIS 49922, at *23 (D. Nev. Apr. 9, 2012) (citing *Jackson*, 246

F.3d at 1254-55).  As recognized by the Ninth Circuit, faulty screening or

negligence in the screening or diagnostic process, as alleged in this case, does not

violate EMTALA.  *Jackson*, 246 F.3d at 1256.  Moreover, EMTALA explicitly

limits the screening examination that a hospital is required to provide to one that is

within the capability of the hospital's emergency department.  *Baker*, 260 F.3d at

995 (concluding that the hospital could not be charged with discriminating against the plaintiff by failing to provide a psychiatric screening where the hospital lacked the capacity to do so).

A recent case from Nevada is instructive on appraising the sufficiency of facts alleged in a complaint for violations of EMTALA's appropriate medical screening requirement.  In *Money*, the plaintiff alleged as here, among other things, that the defendant hospital "failed to provide a screening that complied with established protocols" and that the examination he received "was not comparable to the one offered to other patients presenting with similar symptoms." *Money*, 2012 U.S. Dist. LEXIS at *28.  The court found that such conclusory allegations were insufficient to survive the stringent Rule 12(b)(6) pleading standard under *Iqbal*.  *Id.*  Because the plaintiff had failed to assert any facts for the court to conclude that he was not screened or, that when he was screened, his screening differed from other patients, the court concluded that his claim against the defendant hospital that he received a cursory screening in violation of the EMTALA appropriate screening requirement was unsupported.  *Id.* at 26.

Similar to the claims made by the plaintiff in *Money*, here Plaintiff offers nothing but conclusory allegations that fail to establish that the HPH Defendants violated EMTALA's appropriate medical screening requirement.  For example, Plaintiff resorts to a simple formulaic recitation of the elements for an EMTALA disparate screening claim when he contends that the screening

examination he received was "not in compliance with Defendant's procedures" and that it was "insufficient, discriminatory, cost-saving, and/or cursory" in relation to his severe and acute symptoms.  Without more factual content, such naked assertions are insufficient to survive *Iqbal's* pleading requirements.

In addition, the allegations in the FAC quoted above firmly establish that Plaintiff concedes that the HPH Defendants provided him with an appropriate medical screening examination when he presented at the ER on May 24, 2012 that included, among other things, a physical examination, blood tests, testing of sodium and glucose levels, and an ankle x-ray.  Plaintiff's ER records demonstrate that, in addition, the ER physician obtained a CBC; metabolic screening, which included blood tests for liver and kidney function; a urinalysis to rule out the kidneys as a potential source of infection; antibody tests for influenza A & B, malaria, dengue fever and leptospirosis .  Exh. B, at W00004-8 and W000012-13. Furthermore, Plaintiff's ER record indicates that "the patient was carefully evaluated to appropriately address the presenting complaint and significant testing was done to carefully evaluate and help rule out an imminent or life-threatening problem."  *Id.* at W000008.  Notably, Plaintiff was observed and treated in the emergency department for almost 5 hours prior to his discharge.  *Id.* at W000002.

There is nothing of substance in the FAC to demonstrate that the medical screening Plaintiff received was not comparable to the ones offered to other patients presenting with the same history, complaints and symptoms.  Nor

can this screening be considered cursory.  To the contrary, the screening Plaintiff received was designed to identify acute and severe symptoms that could alert the HPH Defendants to the need for immediate medical attention to prevent serious bodily injury.  *Cf. Lewellen v. Schneck Med. Ctr.*, 2007 U.S. Dist. LEXIS 60358, at *55, 2007 WL 2363384 (S.D. Ind. Aug. 16, 2007) (explaining that a reasonable jury could conclude a screening was so cursory that it was not designed to identify acute and severe symptoms where the plaintiff, who had been in a motor vehicle accident and was complaining of back pain so severe that he could not stand or sit in a chair correctly, was discharged less than one hour after he had been admitted to the hospital before some of his x-rays were even printed); *Hicklin v. WBH Evansville, Inc.*, 2001 U.S. Dist. LEXIS 22649,  at *11 (S.D. Ind. Dec. 14, 2001) (concluding that a 14 minute examination which failed to note the plaintiff's head abrasion, hand injury, and any of the plaintiff's other prior medical conditions prior to the plaintiff's discharge was not reasonably calculated to identify critical medical conditions).  By providing Plaintiff with a careful five-hour medical screening to determine whether an emergency medical condition existed, the HPH Defendants more than met their obligation to provide Plaintiff with an appropriate medical screening on May 24, 2012, as required by section 1395dd(a) of the EMTALA.

While Plaintiff intimates that he was given a disparate examination because he had applied for Med-Quest, the only facts that he offers to support this allegation are that a nurse informed him that other patients with his symptoms were

given MRI or CT scans, but that he would not receive these scans because "the machine was down." Even assuming, *arguendo*, that he was so informed and that the MRI and CT scan equipment was unavailable, Plaintiff is unable to state a claim under EMTALA. As the Ninth Circuit explained in *Baker*, a hospital cannot be held liable for discriminatory screening where the hospital's emergency department lacks the capability to perform a certain type of screening. If the MRI and CT equipment was nonfunctional, as Plaintiff alleges, then these imaging studies would have been unavailable to all patients in the ER, not just to Plaintiff.

The allegations in the FAC also establish that HPH Defendants complied with their obligations under EMTALA to provide Plaintiff with an appropriate medical screening when he returned to the ER on May 27, 2012. Contrary to Plaintiff's allegation that he received a "disparate and/or cursory examination" that could not possibly identify his acute and severe symptoms of necrotizing fasciitis, as discussed above, the ER records demonstrate just the opposite. The physicians diagnosed him with cellulitis (a skin infection); started him on IV antibiotics and **admitted him** to the hospital for further evaluation and treatment. *See* Exh. C, W000029-33. The ER physician specifically considered a diagnosis of necrotizing fasciitis, but concluded that Plaintiff's history and symptoms were not consistent with that condition at that time and explained why he reached that conclusion. *Id.* at W000032-33.

Plaintiff has utterly failed to plead any facts that support a finding that the screening he received when he returned to the ER on May 27, 2012 was not comparable to the screenings offered to other patients presenting with <u>the same history, symptoms and complaints</u>.  Plaintiff's contention that the examination he received that day was cursory is also without merit.  Plaintiff received a medical screening examination that ultimately resulted in a clinical diagnosis, the implementation of appropriate medical treatment and direct admission to the hospital.  For these reasons, Plaintiff's appropriate medical screening claim under section 1395dd(a) cannot stand and must be dismissed.

### 2.    Stabilization

It is well-established in the Ninth Circuit that a hospital has a duty to stabilize a patient under section 1395dd(b) of the EMTALA for "only those emergency medical conditions that its staff detects."  *Bryant v. Adventist Health System West*, 289 F.3d 1162, 1168 (9th Cir. 2002) (citations omitted) (explaining that a hospital that found a patient's lung abscess condition on an x-ray after the patient had already been discharged did not have a duty to stabilize the patient until he returned to the emergency room); *Baker*, 260 F.3d at 993 (concluding that since a physician did not detect an emergency medical condition, there was no duty to stabilize the patient prior to transfer); *Jackson*, 246 F.3d at 1257 (finding that a hospital's failure to diagnose the true cause of a patient's symptoms could not serve as a basis for a violation of the EMTALA stabilization requirements where

the hospital had stabilized the only emergency condition it had detected);

*Eberhardt*, 62 F.3d at1259 (holding that a hospital had no obligation to stabilize a

patient's suicidal tendency because the hospital never detected it).

On his first visit to the ER on May 24, 2012, Plaintiff was given a

medical screening exam and diagnosed with a viral infection and ankle sprain.

*See* Exh. B, W00004-8.  He received IV fluids and pain medication, was observed

and treated for nearly 5 hours and was discharged home with an air cast and two

sets of crutches.  *Id.* at W000020.  The ER records clearly indicate that Plaintiff

was discharged home "in satisfactory condition" (Exh. B, W000008) and that he

did not return until three days later.  This fact alone demonstrates that his condition

was "stable" when he left the ER.  As the HPH Defendants did not find that

Plaintiff had necrotizing fasciitis at that time, they had no duty to stabilize Plaintiff

for necrotizing fasciitis and thus cannot be held liable under EMTALA's

stabilization requirement.  Accordingly, Plaintiff's claim that his emergency

condition was never stabilized by the HPH Defendants is demonstrably wrong.

Plaintiff's failure to stabilize claim likewise does not apply to his

second trip to the HPH Defendants' ER on May 27, 2012, where he was carefully

examined, evaluated and <u>admitted</u> <u>to</u> <u>the</u> <u>hospital</u>.  At the time of his inpatient

admission, he was noted to be "in stable condition."  Exh. C, at W000033.  He

remained in the hospital until May 31, when he was transferred to The Queen's

Medical Center ("QMC").  While the reasons for Plaintiff's transfer to QMC are

not stated in the FAC, they are irrelevant to his EMTALA claims.  The EMTALA

stabilization requirement "ends when an individual is admitted for inpatient care."

*Bryant v. Adventist Health System West*, 289 F.3d 1162, 1168-69 (9th Cir. 2002)

(concluding that defendant hospital had no liability under EMTALA's stabilization

requirement once the patient was admitted for inpatient care).  In accordance with

the principle set forth in *Bryant*, HPH Defendants' duty to stabilize Plaintiff's

emergency condition was satisfied under EMTALA when he was not discharged or

transferred on March 27, 2012, but rather admitted to the hospital.  Therefore,

Plaintiff's section 1395dd(b) claims for relief must be dismissed.

### B.     Plaintiff Cannot State A Claim Under 28 USC § 2201 Due To Lack Of Jurisdiction

Plaintiff's FAC is premised on this court's jurisdiction pursuant to 28

U.S.C. § 1331.  As stated above, the federal jurisdiction Plaintiff seeks to invoke is

that HPH Defendants allegedly violated EMTALA, first, by failing to screen

Plaintiff and, second, by failing to stabilize him.  Plaintiff's FAC does not allege

any other grounds that would warrant the Court's exercise of jurisdiction over

Plaintiff's case.

As there is no basis under the facts alleged by Plaintiff for an

EMTALA claim against HPH Defendants, it necessarily follows that there is no

federal subject matter jurisdiction and that Plaintiff's claim for declaratory

judgment under 28 USC § 2201 must be dismissed pursuant to Rule 12(b)(1) of the

FRCP.  *See Jones v. Community Redevelopment Agency*, 733 F.2d 646, 651

(9th Cir.1984) (stating that dismissal of federal claims before trial dictates that the

pendent state claims should be dismissed as well).

## IV.    CONCLUSION

For the reasons set forth herein, HPH Defendants respectfully request

that this Court dismiss Plaintiff's FAC in its entirety with prejudice.

DATED:   Honolulu, Hawai`i, April 16, 2015.


        /s/ William S. Hunt
        WILLIAM S. HUNT
        JAN M. VERNON
        Attorneys for Defendants
        HAWAII PACIFIC HEALTH;
        WILCOX MEMORIAL HOSPITAL;
        and KAUAI MEDICAL CLINIC